IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**DEC 1 0 1999**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUSTIN OAKERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. $B$-$97$-$197$ |
| | § | |
| CITY OF BROWNSVILLE, | § | |
| ARTURO RODRIGUEZ, and | § | |
| CARLOS RUBINSTEIN, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT AND JURY DEMAND

Justin Oakerson, Plaintiff, complains of the City of Brownsville, Texas, Arturo Rodriguez, EMS Director for the City of Brownsville, and Carlos Rubinstein, City Manager for the City of Brownsville, and for cause of action would show the following.

## I.

## NATURE OF THE ACTION

1.     This is an action for declaratory and injunctive relief, and compensatory and exemplary damages, filed under 42 U.S.C. §1983, wherein Plaintiff contends that the Defendants discharged him in retaliation for his association with a labor organization, the Brownsville Professional Fire Fighters Association, and for his protected political speech on the Association's behalf, in violation of his rights of freedom of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

CutePDF - www.fonic.com

II.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Justin Oakerson is a citizen of Texas residing in Cameron County, Texas.  Plaintiff is a former employee of the City of Brownsville who at all times relevant to this action was working in its Emergency Medical Services Department.

3.      Defendant City of Brownsville is a municipal corporation organized under the laws of the State of Texas.  Service may be had upon Defendant City by serving City Secretary Melissa Dennany Morales at her office address at City Hall, 12th & Market Square, Brownsville, Texas 78520.

4.      Defendant Arturo Rodriguez is an individual who at all times relevant to this action was employed by Defendant City of Brownsville as its Emergency Medical Services Director.  Mr. Rodriguez is sued in both his official and individual capacities.  Service may be had on Defendant Rodriguez by serving him at his office address located at City Hall, 12th & Market Square, Brownsville, Texas 78520.

5.      Defendant Carlos Rubinstein is an individual who at all times relevant to this action was employed by Defendant City of Brownsville as its City Manager.  Mr. Rubinstein is sued in both his official and individual capacities.  Service may be had on Defendant Rubinstein by serving him at his office address located at City Hall, 12th & Market Square, Brownsville, Texas 78520.

6.      This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1343. Venue lies in this Court under 28 U.S.C. §1391.

## III.

## FACTUAL BACKGROUND

7.     Plaintiff began employment with the Brownsville Emergency Medical Services (EMS) Department in 1995.  Prior to the events culminating in his termination in June 22, 1999, all evaluations of his performance indicated that he was a satisfactory employee.

8.     In early 1997, a group of Brownsville EMS personnel, including Plaintiff, approached the Brownsville Professional Fire Fighters Association, a/k/a the International Association of Fire Fighters, Local 970 (the Association), to request that it organize Brownsville EMS employees.  On or about February 13, 1997, the Association's fire fighter membership voted to organize the Brownsville EMS employees.  Although fellow employee Joel Ferrell spearheaded the EMS campaign, Plaintiff was among those who solicited EMS employees for membership association.  During the next two months, fellow EMS employee Joel Ferrell collected Association dues from EMS employees who joined the Association.

9.     In May 1997, Association President Alfredo Christman approached Defendant Rubinstein seeking payroll dues deductions for the Association's EMS members.  Although the Association's fire fighter members already were allowed payroll dues deductions, Defendant Rubinstein denied Christman's request to extend this benefit to the Association's EMS members.

10.     In June 1997, Joel Ferrell published a newsletter entitled the "EMS Dispatch", the purpose of which was to report on the Association's efforts to organize EMS employees.  The newsletter identified Mr. Ferrell by name as the person to contact with questions about the organizational effort.  The newsletter also criticized Defendant Rubinstein's decision to disallow payroll dues deductions.  Mr. Ferrell personally distributed the newsletters at various EMS stations.  At one point, Ferrell asked supervisor Sam Ortega if Defendant Rodriguez had seen one of the flyers.  Ortega replied, "Yes, he's seen it and he wasn't too happy about it."

3

11.     Later in June 1997, Joel Ferrell and other EMS employees volunteered to provide medical services at an annual 4th of July picnic conducted by the Association. Thereafter, Defendant Rodriguez distributed a memorandum to all EMS department personnel, Subject: Volunteer Services by EMS Personnel. The memorandum begins: "It has come to my attention that several members under the mistaken perception they belong to a union, have volunteered to provide medical services on June 29, 1997." The memorandum continued by noting that Defendant City recognizes unions only for its fire fighters and police officers. The memorandum concludes by threatening disciplinary action against any EMS employees who provide EMS stand-by at the Association picnic without prior authorization by the Department.

12.     In the summer or early fall of 1997, Plaintiff was speaking to a group of EMS employees at EMS Station No. 1 concerning the Association. While speaking to the employees, he wrote "UNION" on the chalkboard in large letters. Some time after Plaintiff left the station, Defendant Rodriguez came into the station and saw the word UNION still on the chalkboard. Mr. Rodriguez walked to the chalkboard and erased the word UNION. He asked two EMS employees who were present if they had written the word on the board, and when they denied it, asked whether they knew who had written the word. They denied knowledge. After failing to learn who had written the word on the chalkboard, Mr. Rodriguez said that there would never be a union in Brownsville EMS.

13.     In September 1997, while on duty, Joel Ferrell was dispatched to a medical emergency in the Brownsville area. The patient was dead from a heart attack when Ferrell and his partner arrived on the scene. After correctly following all protocols and standard operating procedures, Mr. Ferrell declared the patient dead on the scene. Thereafter, Defendant Rodriguez conducted an investigation concerning the actions of Mr. Ferrell during the incident. After pre-disciplinary hearings, Defendant Rodriguez terminated Mr. Ferrell's employment on November 21, 1997 based on the false charge that Ferrell had failed to follow proper procedures. Defendant Rodriguez took no action against Mr. Ferrell's partner. He likewise

4

CfutPDF - www.fasio.com

failed to take any disciplinary action against the dispatcher involved in the call.  Neither Mr. Ferrell's partner nor the dispatcher were members of the Association.  Mr. Ferrell appealed Defendant Rodriguez's termination decision to Defendant Rubinstein under the City's termination appeal procedures.  On December 11, 1997, Defendant Rubinstein upheld the termination decision despite the absence of any proven wrongdoing by Mr. Ferrell.  As a result of Mr. Ferrell's termination, efforts to organize Brownsville EMS on behalf of the Association stalled, and membership in the Association by EMS employees declined.

14.  Other EMS employees who were not part of the Association's organizational efforts were not disciplined or discharged by Defendants despite engaging in misconduct.  In August 1997, an EMS employee who fell asleep in the back of an ambulance and falsified a medical report was not discharged, but was merely placed on probation.  A supervisor who ordered medics not to provide medical care to a heart attack patient who been brought across the border from Mexico was not disciplined even though the patient died for lack of care.

15.  In the summer of 1998, the Brownsville EMS Training Officer was killed in an accident.  In October 1998, Defendant Rodriguez began taking applications to fill the vacant Training Officer position.  Plaintiff was selected for the position on January 18, 1999.

16.  Shortly after he was selected as Training Officer, Plaintiff began talking to other EMS employees about getting the Association's organizational drive among EMS employees started again.  By February 1999, largely as a result of Plaintiff's efforts, more than 50% of the EMS employees had joined the Association.

17.  In March 1999, Plaintiff helped Association officers organize a meeting with Brownsville Mayor Henry Gonzalez and City Commissioner John Wood.  The meeting occurred on a weekday morning during Plaintiff's working hours, and he thus was unable to attend.  Nonetheless, he helped organize the meeting and publicized the meeting to all employees on each shift.  About ten EMS employees attended the meeting.  Approximately a week after the meeting, Plaintiff received a negative evaluation from Assistant EMS Director Jeff Johnson and

5

an informal reprimand from Defendant Rodriguez concerning employee complaints raised at the meeting with the Mayor.

18.    In late April 1999, Defendant City opened new Fire Station No. 2.   Plaintiff attended the opening of the station, which was also attended by the Brownsville mayor and Association officers.   On April 25, 1999, a campaign ad placed in the Brownsville newspaper by the mayor featured a picture of Plaintiff with the Association President and Vice President.   The Plaintiff and the Association officers were identified by name and position in the caption underneath the picture.

19.    In May 1999, probationary EMS employee Bryan Chandler spent approximately two hours assigned to a unit with Defendant Rodriguez, who was substituting for an absent employee. While returning from an emergency call, Defendant Rodriguez asked Mr. Chandler if he was a member of the Association or knew any other employees who were members.   Mr. Chandler denied both that he was a member and that he knew other members.   Defendant Rodriguez then told him that joining the Association would be a bad career move for Mr. Chandler.    Feigning ignorance, Mr. Chandler asked Defendant Rodriguez concerning the purpose of the Association.   Mr. Rodriguez told Mr. Chandler that the Association was a fire fighter organization but that some EMS employees wanted to join the Association to get free representation. He then proceeded to tell Mr. Chandler that the Association could not help EMS employees and made other disparaging comments about the Association.

20.    After his picture was printed in the Brownsville newspaper, Plaintiff went on vacation for approximately two weeks. After his return from vacation, he resumed his normal duties.  However, on June 22, 1999, Defendant Rodriguez called him into the office on a pretext. When Plaintiff arrived at the meeting, Defendant Rodriguez told Plaintiff that he had not successfully completed his probation as Training Officer and that Defendant Rodriguez therefore was terminating his employment with Brownsville EMS.    Defendant Rodriguez knew at the time that Plaintiff was a leader in organizing The Brownsville EMS employees for the

6

Association.  Defendant Rodriguez told Plaintiff that his performance was unsatisfactory even though Plaintiff taught paramedic courses at the college level and had received accolades from others, including the Brownsville Fire Chief, for his skill in providing paramedic and EMT training.  Although Brownsville EMS was short staffed, Defendant Rodriguez did not offer to return Plaintiff to his former position as Paramedic.  However, another employee serving a probationary period as a Paramedic was allowed to resume his prior job as an EMT when he failed to successfully complete his probationary period.

21.    Plaintiff appealed his termination as EMS Training Director to Defendant Rubinstein. Defendant Rubinstein, noting that Plaintiff was considered a probationary employee after his promotion to Training Officer, refused to provide Plaintiff with a hearing to contest his termination.

22.    After Plaintiff was terminated as Brownsville EMS Training Director for alleged poor performance, he continued to teach paramedic training courses as an instructor at the University of Texas at Brownsville.  He also was hired as a paramedic for another local EMS service.

### IV.

### CAUSE OF ACTION

23.    Paragraphs 1-22 are incorporated herein by reference.  This cause of action is brought against Defendant City of Brownsville, and against Defendants Rodriguez and Rubinstein in both their official and individual capacities.

24.    Defendant Rodriguez, acting in his capacity as a policy-making officer of Defendant City, discharged Plaintiff in retaliation for Plaintiff's membership in and service to the Brownsville Professional Fire Fighters Association.  Defendant's actions complained of herein violated Plaintiff's right of association and freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.  The actions of Defendant Rodriguez

did in fact deprive Plaintiff of his First Amendment rights as those rights are secured to him by the provisions of the due process clause of the Fourteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. §1983.

25.     Defendant Rubinstein, acting in his capacity as a policy-making officer of Defendant City, denied Plaintiff's termination appeal, despite the absence of any legitimate basis for discharge, in retaliation for Plaintiff's membership in and service to the Brownsville Professional Fire Fighters Association.  Defendant Rubinstein's actions complained of herein violated Plaintiff's right of association and freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.  The acts of Defendant Rubinstein did in fact deprive Plaintiff of his First Amendment rights as those rights are secured to him by the provisions of the due process clause of the Fourteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. §1983.

26.     Defendant City of Brownsville is liable for the actions of Defendants Rodriguez and Rubinstein.  The actions of the individual Defendants alleged herein represent the official policy of the City of Brownsville.  Defendant Rodriguez alone establishes the official policy of the City of Brownsville concerning matters involving the EMS department.

27.     In effecting the above-mentioned actions, Defendants Rodriguez and Rubinstein acted without authorization of law, willfully, knowingly, and purposely, with the specific intent of depriving Plaintiff of his First and Fourteenth Amendment rights of free speech and association. The individual Defendants thus are liable to Plaintiff for exemplary damages.

## V.

### INJURY

28.     Paragraphs 1-27 are incorporated by reference herein.

29.     As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff has suffered the following injuries:

8

a.     Plaintiff has suffered and continues to suffer the loss of his employment and the wages and benefits earned in that employment.  Plaintiff further has suffered the loss of earning capacity, which loss will continue indefinitely in the future.

b.     Plaintiff has suffered, and continues to suffer, mental pain and anguish because of Defendants' wrongful acts; injury to his good name, character and to his general and professional reputation; embarrassment and humiliation; and loss of enjoyment of life.

c.     Plaintiff has been deprived of having and exercising the rights and privileges guaranteed to citizens of the United States and the State of Texas by the First and Fourteenth Amendments to the United States Constitution.

30.     Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendants' policies, practices, customs and usages.  Plaintiff has no plain, adequate and complete remedy at law to redress the wrongs alleged, and this action for declaratory and injunctive relief, and for damages, is the only means of securing adequate relief.

## VI.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial the Court award Plaintiff the following relief.

A.     Enter a declaratory judgment that the Defendants' actions complained of herein violated Plaintiff's rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

B.     Permanently enjoin Defendants from violating Plaintiff's rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

C.     Order the Defendants to restore to Plaintiff all back pay and benefits lost to him as a result of Defendants' termination of his employment.

9

D.     Order Defendants to reinstate Plaintiff to his former position with the Emergency Medical Services Department, or if reinstatement is impracticable, award Plaintiff front pay in lieu of reinstatement.

E.     Award Plaintiff compensatory damages in an amount in excess of the jurisdictional limits of the Court for Plaintiff's past and future mental anguish, loss of earning capacity, and other losses specified hereinabove.

F.     Award Plaintiff exemplary damages against Defendants Rodriguez and Rubinstein in their individual capacities, for their willful and wanton acts in violation of Plaintiff's constitutionally protected rights.

G.     Award Plaintiff his attorney fees and costs pursuant to 42 U.S.C. §1988.

H.     Award Plaintiff pre- and post-judgment interest at the maximum rate allowed by law on all back pay, compensatory damages and attorney fees and costs awarded.

I.     Award Plaintiff such further and additional relief to which he may show himself justly entitled.

Respectfully submitted,

JENKINS & DEATS, P.C.

B. Craig Deats
TBN: 05703700
327 Congress Ave., Suite 300
Austin, Texas 78701
(512) 474-6200
FAX (512) 474-7896

CARINHAS & SALDAÑA, L.L.P.

Miguel A. Saldaña
TBN: 17529450
Corporate Plaza, Suite 109
302 Kings Highway
Brownsville, Texas 78521
(956) 542-9161
FAX (956) 542-3651

Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all claims so triable.

B. Craig Deats

11